JjCLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE

On December 24, 1998, Tyrone Anderson, a twenty-four year old male, experienced pain in his left side radiating into his left testicle. At the time the pain began, Anderson was working at Shoney’s as a busboy. He went to the Meadowcrest Hospital Emergency Room and reported his symptoms to a triage nurse. He was then seen by Dr. Mark F. Silady. Dr. Silady diagnosed Anderson as suffering from abdominal musculoskeletal etiology, or acute abdominal tenderness. Dr. Silady advised Anderson to return to a doctor or to the hospital if his condition did not improve.
Anderson returned home and remained in bed until December 26, 1998, when he went to the West Jefferson Medical Center Emergency Room. On that day, the emergency room physician diagnosed him as *1025 suffering from “torsion” of his left testicle. A “torsion” is generally described as a congenital anomaly that can lead to a testicle’s rotational twisting on the spermatic cord to which it is attached. This twisting constricts the blood flow to the testicle. If surgery is not performed, the testicle can become necrotic and must sometimes be removed. pAfter an ultrasound, the emergency room physician confirmed the torsion and Anderson was prepared for surgery. A urological surgeon removed the necrotic left testicle and “tacked” the remaining testicle to prevent it from later “torsing”.
Thereafter, Anderson filed a complaint with the Louisiana Patient’s Compensation Fund and a Medical Review Panel was convened. After a hearing, one panelist found that Dr. Silady met the standard of care required of an emergency room physician and two panelists found that Dr. Sila-dy failed to comply with the standard of care required and the conduct by Dr. Sila-dy was a cause of the damages suffered by Anderson.
On January 5, 2000, Anderson filed a Petition for Damages seeking damages for Dr. Silady’s negligent failure to diagnose and treat his condition. Trial was held March 24-27, 2003. On August 12, 2003, the trial court rendered a judgment in favor of the plaintiff, finding that Dr. Sila-dy had breached the standard of medical care owed to Anderson and the breach caused the damages complained of by Anderson. The trial court awarded Anderson $30,000 in general damages, plus medical expenses in the amount of $9,370.72, plus interest and costs. The judgment was read in open court on June 9, 2003. The transcript of the June 9, 2003 proceeding indicates that the trial judge gave reasons for judgment and made specific findings concerning the expert testimonies and the evidence presented.
Dr. Mark Silady now appeals the trial court’s judgment arguing two assignments of error. First, he argues that the trial court erred in applying a “presumption of objectivity” and according greater weight to the testimony of the medical review panelists than to the testimony of non-panel medical experts. Second, he argues that the trial court erred in concluding that Dr. pSilady violated the applicable standard of care in his emergency room treatment of the plaintiff.
Anderson also appeals the trial court’s judgment arguing that the general damage award of $30,000 was unreasonably low and should be increased.
For the reasons which follow, we affirm the trial court’s finding that Dr. Silady breached the standard of care in his treatment of Anderson and also affirm the trial court’s award of $30,000 in general damages and $9,271.42 in medical expenses to Anderson.

DISCUSSION

After trial and a review of all evidence presented, including the testimony of the three panel members and the experts retained by the parties, the trial court rendered a judgment and presented reasons for that judgment on the record in open court. The trial court fully reviewed the testimonies of all three panel members and the experts retained by the parties. In regards to all three panel members, the trial court stated that the law presumes that the panel members are objective or are accorded the same presumption of objectivity.
La. R.S. 40:1299.47 provides that the medical review panel is composed of three health care providers. One healthcare provider is chosen by the plaintiff, one by the defendant and one by the other two members. La. R.S. 40:1299.47 further *1026 provides that before starting their duties as panelists, they shall each subscribe an oath before a notary that states:
I, (Name) do solemnly swear/affirm that I will faithfully perform the duties of medical review panel member to the best of my ability and without partiality or favoritism of any kind. I acknowledge that I represent neither side and that it is my lawful duty to serve with complete impartiality and to render a decision in accordance with law and the evidence.
IsThe original of each oath shall be attached to the opinion rendered by the panel. A review of the exhibits presented at trial reveals that the oaths were not attached to the opinion and entered into evidence at trial. However, the requirement that each panel member subscribe to this oath does indicate that, by law, there is a presumption that the panel members will decide the matter without partiality or favoritism. Therefore, the trial court was proper in stating that the panel members are presumed to be objective. The panel members’ testimonies are not, however, given more weight than the testimonies of other experts with the same or equal qualifications.
A review of the transcript of the trial court’s reasons for judgment indicates that the trial court fully considered the opinions of all experts, both panel members and non-panel members, before deciding in favor of the plaintiff. Although the trial court afforded the panel members the presumption of objectivity, the trial court also considered the testimony of the experts hired by the parties. In addition, the trial court afforded the same presumption to the panel members who found in favor of the plaintiff, as well as the one panel member who found in favor of Dr. Silady. Thus, we find the trial court correctly reviewed and weighed all evidence and testimonies before arriving at a verdict and did not afford greater weight to the testimonies of the medical review panel members.
Next, we agree with the trial court’s finding that Dr. Silady failed to meet the standard of care required of an emergency room physician and that the damages suffered by the plaintiff were a result of that conduct. The panel’s opinion states that all members agree that the plaintiff presented to Meadowcrest Hospital and Dr. Silady with a suspicious history for testicular torsion and that Dr. Silady considered this diagnosis. However, two of the panel members found that a nuclear testicular scan or Doppler ultrasound of Dthe testicle should have been ordered since there were no other findings or explanation for the symptoms. One panel member found that Dr. Shady’s judgment not to perform the scan or ultrasound was reasonable based on the negative exam for testicular torsion.
Two panel members, Dr. Richard Roberts and Dr. Michael Grieb, testified at trial that they found a violation in the standard of care because Dr. Silady did not rule out testicular torsion when he did not do the ultrasound. Dr. Roberts further testified that the standard of care would have required a charting of the observations which caused Dr. Silady to reach the conclusion that there was no testicular torsion. Dr. Silady did not chart the observations that led to that conclusion.
The third panel member, Dr. Richard McConnell, testified that he believed Anderson’s exam was not consistent with a diagnosis of testicular torsion and there was no indication on the first emergency room visit that he needed further testing. Dr. McConnell testified that there was an initial suspicion of testicular torsion but the exam of the plaintiff took away that possibility. Dr. McConnell further testi *1027 fied that if there was an uncertain diagnosis, his preference would be to do the Doppler ultrasound.
Dr. Wayne John G. Hellstrom then testified as an expert specializing in male fertility and sexual dysfunction. The trial court points out that he was originally called to testify regarding damages, but his testimony expanded. He testified that if he were suspicious of testicular torsion, he would operate right away and if he was even slightly suspicious or semisuspicious he would obtain a Doppler ultrasound.
Dr. Joseph S. Littner testified as an expert for the defense. He believes that Dr. Silady’s note in the chart that states “no evidence of torsion”, without stating the test conducted or the findings which led to that conclusion, is |7sufficient. He also testified that he had never seen a patient with testicular torsion that presented with normal testicular pain. Dr. Silady testified that he thought the plaintiffs testicle more than likely torsed while at work in the morning and then detorsed before he went to the emergency room and then retorsed again after he left the emergency room. Dr. Littner agreed with this opinion.
The plaintiff, Anderson, testified that when he reported to the emergency room and to the triage nurse, he simply pointed to the areas that hurt. He stated that he told Dr. Silady that the left testicle felt firmer than the right and that it hurt in the testicle. Anderson stated that he did not say his “flank” or “scrotum” hurt because he doesn’t know what that is. He further testified that Dr. Silady did not perform a physical exam of his testicles.
Based on a review of the testimonies and evidence presented at trial, we agree with the trial court that Dr. Silady failed to meet the standard of care required by an emergency room physician when he did not perform further testing to rule out the possibility of a testicular torsion.
And finally, we affirm the trial court’s general damage award of $30,000 for Anderson. Dr. Hellstrom, who is board certified in urology and specializes in male fertility and sexual dysfunction, testified that Anderson was predisposed to being reproductively impaired even before he had torsion. Sperm tests were performed after the surgery on November 2, 2000 and June 22, 2001. Those tests showed very good sperm counts and normal motility. The only abnormal finding was in relation to the morphology, or sperm shape. Dr. Hellstrom testified that Anderson’s sperm shape was abnormal and this finding is consistent with patients who have testicular torsion. This abnormal shape can affect a patient’s ability to conceive children. However, Anderson has previously fathered a child, so conception is possible. Dr. Hellstrom also ^testified that there is a good likelihood that Anderson’s semen analysis may have looked very similar to what it is now before the torsion and the surgery. He also stated that Anderson could father a child, if not naturally, then with a little help.
If Anderson had been diagnosed with torsion by Dr. Silady, at the Meadowcrest Hospital emergency room, then he may not have needed removal of his testicle and may not have needed to undergo such an invasive surgery. However, we do not find that the surgery and removal of Anderson’s testicle dramatically decreased his chances of conceiving children in the future. Therefore, we affirm the trial court’s general damage award of $30,000.
In accordance with the above, we affirm the trial court’s judgment finding that Dr. Silady failed to meet the standard of care required of an emergency room physician and we further affirm the trial court’s general damage award of $30,000, plus *1028 medical expenses of $9,271.42 and interest and costs.

AFFIRMED